960 F.2d 143
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Oscar MONTALVO, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 91-2064.
 United States Court of Appeals, First Circuit.
 April 16, 1992
 
 Franciso J. Hernandez-Rentas and Sigfredo Portalatin-Tosado on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Donna C. McCarthy, Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee.
 Before Torruella, Circuit Judge, Campbell, Senior Circuit Judge, and Cyr, Circuit Judge.
 Per Curiam.
 
 
 1
 Claimant Oscar Montalvo (Montalvo) appeals a district court judgment affirming a decision of the Secretary of Health and Human Services that denies Montalvo social security disability benefits. We affirm.
 
 I.
 
 2
 Claimant applied for benefits on November 5, 1987, when he was fifty-two years old. He alleged that he had been disabled due to a "back condition (discs)" since undergoing a lumbar laminectomy on January 16, 1987. Claimant's insured status expired on December 31, 1987. The Secretary denied Montalvo's initial application and request for reconsideration on the ground that Montalvo retained the capacity for light work which allowed him to alternate positions. (Tr. 78, 86). After an administrative hearing at which the claimant, a medical advisor, and a vocational expert testified, the Secretary's administrative law judge (ALJ) denied Montalvo's claim at step five of the sequential evaluation process. See Goodermote v. Secretary of Health and Human Services, 690 F. 2d 5, 6-7 (1st Cir. 1982). Specifically, the ALJ found that claimant's condition precluded his return to his past work as a janitor (a heavy, unskilled job) and public car driver (a light, semi-skilled job) but that claimant retained the residual functional capacity (RFC) to perform light, unskilled work in which he could alternate positions and avoid frequent bending and squatting, unprotected heights, moving machinery and extreme temperature changes. (Tr. 14). The Appeals Council affirmed the ALJ's decision, thereby rendering the denial final.
 
 
 3
 Claimant sought judicial review of the Secretary's decision under 42 U.S.C. § 405(g). The district judge referred the case to a magistrate judge (magistrate), who recommended that the Secretary's decision be vacated as unsupported by substantial evidence. The Secretary filed timely objections to the magistrate's report. The district court rejected the magistrate's recommendation and affirmed the Secretary's decision denying claimant benefits. This appeal followed.
 
 II.
 
 4
 The medical evidence is as follows. Between 1982 and 1986, claimant was treated for sporadic complaints by Dr. Arroyo. By February 1986 these complaints included back pain and numbness. (Tr. 117). Claimant was referred to the Mayaguez Medical Center in late 1986 for persistent back pain. On January 16, 1987, claimant had a bilateral lumbar laminectomy. (Tr. 92-111). His post-operative course was uneventful; he did not require physical therapy nor medications. (Tr. 92).
 
 
 5
 Claimant returned to Dr. Arroyo in August 1987 with complaints of back pain. Medications were prescribed. Claimant filed his initial application for benefits in November 1987, when he also sought treatment from the Cabo Roja Medical Center. He was placed on Valium and Parafon Forte for pain. (Tr. 144).
 
 
 6
 The Secretary procured an evaluation from Dr. Melba Sotomayer, a consulting neurologist, who examined claimant on December 4, 1987. At that time claimant voiced complaints of continuous moderate pain in the left lumbar region with right leg numbness. Physical examination disclosed mild to moderate tenderness and muscle spasm at the left lumbar area. (Tr. 122). Muscle strength was normal (5/5) and no atrophy or fasciculations (twitching) was observed. Claimant was able to stay on his tiptoes and heels. (Tr. 123). There was no evidence of ataxia (inability to coordinate movements). Claimant displayed a slow normal gait. Lasegue's test was positive.[1] Claimant also exhibited pain upon straight leg raising to 70 degrees on the left. The right side was normal. Forward bending was limited to 60 degrees. The Achilles reflex was absent on the left. No motor or sensory disturbances that followed anatomic distribution were observed. X-rays showed mild dextroscoliosis, moderate osteoarthritis, and straightening of the lordotic curve suggestive of muscle spasm. (Tr. 124). Dr. Sotomayer diagnosed claimant to be suffering from left S1 radiculopathy. (Tr. 123).[2]
 
 
 7
 In January 1988, x-rays showed loss of space at L5-S1. Treatment with pain medications continued throughout 1988. At the time of the hearing in November 1988, claimant was taking Tolectin (a nonsteroid anti-swelling drug) and another medication. (Tr. 154).
 
 
 8
 At the November 1988 hearing, claimant testified that he suffered from permanent strong pain on his left side. He said that his medications helped relieve the pain if he remained still. His right leg is numb and fails him, resulting in a fall on one occasion in March 1988. There is no evidence that claimant sought medical treatment as a result of the fall. Claimant began using a cane, although there is no evidence one was prescribed or recommended by any of his treating physicians. His wife monitors him in the shower in case he loses balance. (Tr. 72).[3] He reported that he has stopped driving, and denied participating in any household chores, shopping, or going to church. His daily activities included watching television, listening to the radio and reading. Claimant maintained that he cannot bend nor can he sit or stand for long periods of time.
 
 
 9
 Dr. Jorge Bonilla, a consulting neurologist, testified that Dr. Sotomayer's conclusion that claimant suffered from radiculopathy was supported by the positive test results upon straight leg raising on the left, although the degree of limitation indicated that claimant did not suffer from a severe compression. Dr. Bonilla also testified that claimant's numbness, while not compatible with radiculopathy, suggested the presence of a spinal lesion, although other evidence of this was lacking. When asked whether claimant needed a cane, Dr. Bonilla testified that claimant was trying to lean on the right leg which feels numb, and that as a result of the numbness, insufficient information would be transmitted to the brain for adequate coordination. (Tr. 35-36). Dr. Bonilla next observed that a patient who could walk on the tips of his feet and heels (as claimant had upon examination by Dr. Sotomayer eleven months before the hearing) would not need a cane. (Tr. 36). Dr. Bonilla concluded that claimant retained the RFC for sedentary to light work. He could lift up to twenty pounds occasionally and 10 pounds frequently. Claimant had the ability to sit for four hours and stand for four hours, but required a job where he could alternate sitting, standing and walking. Claimant had to avoid bending and kneeling as much as possible, unprotected environs, working with moving machinery, and severe temperature changes. (Tr. 32-33).
 
 
 10
 In response to a hypothetical based on this RFC, the vocational expert testified that claimant could perform the light, unskilled jobs of a hand marker, caser, and product bagger if he did not need a cane and was not in constant severe pain. The ALJ relied on the vocational expert's testimony as well as Grid Rule 202.11 (approaching advanced age, limited to light work, and limited education) in finding that claimant was not disabled.[4]
 
 III.
 
 11
 On appeal, claimant argues that the Secretary's decision is not supported by substantial evidence because the Secretary failed to consider the evidence of claimant's nonexertional limitations, failed to properly evaluate claimant's complaints of pain under Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986), and impermissibly concluded that claimant's condition was amenable to medications. Each of these contentions is meritless. The record discloses that the ALJ gave due consideration to claimant's nonexertional limitations by crediting the evidence that claimant should avoid frequent bending and squatting.[5] The ALJ further questioned claimant about the location, severity, and duration of his pain and its effect on claimant's daily activities. Claimant himself testified that his pain was helped by medications provided that he remained still. (Tr.26). There was no evidence from any of claimant's treating physicians that his pain was disabling. We think that the Secretary gave due consideration to claimant's subjective complaints and accorded them a weight justified by Dr. Sotomayer's objective findings.
 
 
 12
 We are troubled, however, by the apparent error of the vocational expert in identifying certain jobs claimant can perform. The vocational expert testified that the jobs of hand marker II (DOT 920.687-96)(sic), caser (788.687-026) and product bagger (DOT 920.587-018) all entailed light work and would allow claimant to alternate positions.[6] Yet the Dictionary of Occupational Titles (DOT) (revised 4th ed. 1991) describes the positions of caser and product bagger as medium in their exertional requirements. The job of hand marker II is a light job and, according to the vocational expert, 815 such jobs existed in Puerto Rico, 145 in claimant's specific area. (Tr. 38-39).
 
 
 13
 Courts have vacated the Secretary's decisions when the vocational expert's testimony has been contradicted by the DOT. See, e.g., Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984). But for the fact that the Secretary has identified the job performed by a hand marker II as within claimant's functional capacity, we might also be compelled to vacate for additional evidence. It is the Secretary's burden to adduce evidence of other jobs that the claimant can perform once the claimant's inability to return to his past relevant work has been established. See, e.g., Rosado v. Secretary of Health and Human Services, 807 F.2d 292, 294 (1st Cir. 1986). The vocational expert's apparent error in describing the exertional requirements of the other positions precludes our reliance on them as evidence that claimant is capable of performing other work. However, in light of the evidence that claimant can perform the exertional requirements of the marker II position, which exists in substantial numbers in Puerto Rico, we think the finding that claimant is not disabled is supportable.
 
 
 14
 It was the claimant's burden to establish that he suffered from a disabling impairment before his insured status expired. Cruz v. Secretary of Health and Human Services, 818 F.2d 97, 98 (1st Cir. 1987)(per curiam). While the medical evidence disclosed the existence of an impairment that could reasonably be expected to produce pain (i.e., the left S1 radiculopathy diagnosed by Dr. Sotomayer), the only evidence of claimant's RFC from the insured period suggested that he retained the capacity for the full range of light work. (Tr. 89-91). While subsequent RFCs suggested that claimant's deteriorated after his insured status expired, they do not suggest that it deteriorated to the point of being disabling. Accordingly, we conclude that there is substantial evidence to support the Secretary's conclusion that claimant is not disabled.
 
 
 15
 Affirmed.
 
 
 
 [1]
 Lasegue's test for sciatica produces pain upon flexion of the hip when the knee is extended, but no pain when the knee is flexed. See The Sloane-Dorland Annotated Medical-Legal Dictionary, (1987 ed.), p. 645
 
 
 [2]
 The Secretary obtained RFC assessments from two non-examining consultants. In December 1987, Dr. Hernandez Colon found that claimant retained the basic strength capacities for light work (i.e., the ability to lift a maximum of twenty pounds occasionally and ten pounds frequently, the ability to stand, walk and sit a total of six hours in an eight hour day, and the ability to push and pull light objects. See 20 C.F.R. § 404.1567(b). Dr. Hernandez found that claimant was limited to occasional stooping (which is also consistent with most light work, see SSR 83-10) and was otherwise capable of frequent climbing, balancing, kneeling and crouching. (Tr. 89). The second RFC assessment was performed by Dr. Luz Anduze, a neurologist, in June 1988. Dr. Anduze largely agreed with Dr. Hernandez's assessment, but concluded that claimant was also limited to only occasional climbing, balancing, kneeling and crouching. (Tr. 81)
 
 
 [3]
 In April 1988, the SSA representative who took claimant's request for reconsideration observed that claimant had difficulty walking, did not bend his right knee and held onto his wife with his left hand while using a cane with his right hand. (Tr. 74)
 
 
 [4]
 After claimant's hearing, his counsel submitted a CT scan from May 31, 1989 which showed neural canal stenosis at L4-5, spondylosis and facet hypertrophy. This evidence, which was not considered by the Secretary's previous consultants or the ALJ, was considered by the Appeals Council which upheld the decision denying claimant benefits
 
 
 [5]
 Restrictions on a claimant's ability to bend, crouch, and stoop are nonexertional limitations. See Frustaglia v. Secretary of Health and Human Services, 829 F.2d 192, 195 (1st Cir. 1987); SSR 85-15
 
 
 [6]
 The record appears to misstate the numerical listing of the hand marker II, which, as described by the vocational expert, appears to coincide with DOT # 907.687-126