**Ralph FULLER, Plaintiff,**

v.

**Donna SHALALA, Secretary of Health & Human Services, Defendant.**

No. 94 Civ. 0763 (DC).

United States District Court,
S.D. New York.

Sept. 15, 1995.

Michael Joseph J. Barnas, New York City, for plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York, Sapna V. Raj, Assistant U.S. Attorney, New York City, for defendant.

CHIN, District Judge.

Plaintiff Ralph Fuller ("Fuller") brings this action under sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (the "Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), challenging a final determination of the Secretary of Health and Human Services (the "Secretary") that Fuller is not entitled to disability insurance benefits and Supplemental Security Income under the Act. Fuller seeks judgment on the pleadings or summary judgment, pursuant to Fed. R.Civ.P. 12(b)(6) or 56(b), respectively.[1] The Secretary moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons discussed below, the Secretary's determination denying benefits is affirmed.

## I. BACKGROUND

### A. Prior Proceedings

Fuller filed an application for disability insurance benefits on April 1, 1992. (Tr. 126–29, 137–39).[2] The application was denied initially and a request for reconsideration was also denied. (Tr. at 132–36, 146–50). Fuller then requested a hearing before an administrative law judge. This request was granted and a hearing was held on March 2,

---

1. Given the procedural posture of this case, the proper motion is one for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The Court will treat Fuller's motion accordingly.

2. "Tr." refers to the transcript of the administrative record filed by the Secretary as part of her answer.

1993 before Administrative Law Judge Thomas R. Dorsey, who considered Fuller's petition *de novo.* (Tr. 24–125). Fuller was represented by counsel at the hearing. The ALJ issued a decision finding that Fuller was not disabled within the meaning of the Act and therefore was not entitled to disability benefits. This decision became the Secretary's final decision when the Appeals Council denied Fuller's request for review on December 3, 1993. (Tr. 5–6). Fuller then commenced this action seeking a reversal of the Secretary's decision or a remand for a new hearing.

## B. *Facts*

Fuller was born on July 8, 1955 and is a high school graduate. (Tr. 32, 82). He has worked as a security guard and, most recently, in the construction industry as both a timekeeper and a structural iron worker. (Tr. 36, 38, 43). On October 30, 1989, Fuller injured his back and scrotal area while lifting heavy stone. (Tr. 45). Fuller was treated at Our Lady of Mercy Medical Center emergency room and discharged. (Tr. 51, 181). He returned to the emergency room the next day with a fever and right testicle and epididymis enlargement and pain. Fuller was admitted to the hospital for treatment and remained there for one week.

At the hospital, Fuller complained of scrotal pain and back pain. For his scrotal pain, Fuller was examined by Dr. George Owens, a urologist. Dr. Owens diagnosed Fuller has having acute right epididymal orchitis. (Tr. 182). He instructed Fuller not to lift heavy items, to rest, and to wear scrotal support. (*Id.*). On December 18, 1989, Dr. Owens reported to the Workers' Compensation Board that Fuller's injury was "unlikely" to restrict Fuller permanently.[3] (Tr. 311).

Dr. Stephen Weitz was the first doctor to examine Fuller for his back pain. He examined Fuller at the hospital on November 3, 1989, noting that Fuller had no back tenderness, mild back spasm, and back and abdominal pain. He diagnosed Fuller as having a

back sprain but no herniated disc. (Tr. 190). On April 12, 1990, Dr. Weitz saw Fuller for a second time. He indicated that Fuller stood flexed forward and to the right. Fuller was able to move, but with pain. He detected some paravertebral muscle spasm, but found no neurological deficits. He again determined that Fuller had a lower back sprain, but no herniated disc or other ailment that would require a neurological procedure. (Tr. 309). Dr. Weitz also concluded that, until his pain resolved, Fuller remained disabled. (*Id.*).

Dr. Weitz then referred Fuller to Dr. Robert Spindel. Dr. Spindel examined Fuller ten times between April 1990 and September 1990. During his initial examination, Dr. Spindel noted that Fuller complained of pain, had decreased left ankle jerk, and that a straight leg raising test was negative. He diagnosed Fuller has having a resolving epididymitis and back strain along with a great deal of fear and anxiety. (Tr. 346–47). Dr. Spindel prescribed a treatment program of applying ice regularly, followed by a series of motion and strengthening exercises. (Tr. 347). Through May and June 1990, Dr. Spindel noted that compliance with his prescribed therapy regimen led to gradual improvement in Fuller's flexibility and a reduction in pain; however, Fuller's pain returned when he failed to perform his prescribed exercises or to ice his back. (Tr. 194–200).

By September 5, 1990, Dr. Spindel concluded that Fuller was "doing much better"—Fuller could flex forward within four inches of touching his toes; his gait was normal; and he no longer was taking Elavil, a prescription medication. (Tr. 193). Dr. Spindel noted Fuller's poor compliance with his prescribed home therapy program. (Tr. 192). Nevertheless, he sent Fuller to Dr. Lenore Gladstone to pursue further physical therapy. (*Id.*).

Dr. Gladstone examined Fuller six times between September 1990 and April 1992. At her initial consultation on September 12, 1990, Dr. Gladstone indicated that Fuller had

---

**3.** Fuller did not receive any other medical treatment for his scrotal pain until August 16, 1992, when he checked into the hospital complaining of right scrotal pain, a high fever, chills, and a

yellow discharge from his urethra. (Tr. 286). Treatment reduced the scrotal swelling and tenderness and lowered the fever. Fuller was discharged on August 18, 1992. (*Id.*).

a scoliotic posture, which was due to spasm of the right thoraco-lumbar muscles. She noted that a nodule was present in subcutaneous tissue overlying the right ninth rib postero-laterally. (Tr. 310). Also, Dr. Gladstone reported back flexion of 60°, extension of 0° with pain, and lateral bending of 30° to left and right with pain. Fuller had no motor or sensory deficits. (*Id.*). Dr. Gladstone determined that Fuller had low back derangement and fibroma. She prescribed physical therapy three times a week to improve posture, to reduce spasm and pain and to enable Fuller to return to work in the construction industry as soon as possible. (*Id.*).

Fuller returned to Dr. Gladstone for treatment in January, July, and September 1991 and March 1992. On April 17, 1992, after another visit from Fuller, Dr. Gladstone reported Fuller's condition. Dr. Gladstone's clinical findings were that Fuller had a mild lumbar sprain and a tender nodule over the right rib. (Tr. 206). Fuller had flexion-extension to 70°. (Tr. 212). Dr. Gladstone also determined that Fuller could carry up to fifteen pounds, could stand or walk up to two hours per day, could sit without limitation, and could do limited pushing or pulling. (Tr. 214).

Meanwhile, Fuller saw Dr. Mauro in December 1991 to determine whether Fuller was entitled to workers' compensation benefits. Fuller reported to Dr. Mauro that he was seeing his treating physician every three months, was not undergoing therapy, and was not working. (Tr. 204). He had no complaints pertaining to his scrotal area, but had constant pain in his mid and right back. After analyzing Fuller's range of movement, Dr. Mauro concluded that Fuller suffered from a permanent partial disability. (*Id.*).

The final doctor to evaluate Fuller was Dr. David MacPeek. Dr. MacPeek saw Fuller one time, on February 22, 1993. After examining Fuller, Dr. MacPeek concluded that Fuller could sit, stand, and walk for two hours each, lift ten pounds, bend and squat for two hours each, grasp for four hours, push or pull for two hours, and do fine manipulations for six hours. (Tr. 347).

Other background information was adduced at the hearing through Fuller's testimony. Fuller lives on the second floor of a four-family residence. (Tr. 32). He drove a car on occasion until July 1990. He takes the bus or subway to medical appointments. (Tr. 33, 35). He shops occasionally, goes to church once a week, and otherwise reads and watches television. (Tr. 56–59). Fuller receives workers' compensation benefits based on a finding of permanent partial disability. (Tr. 157).

Fuller has not sought employment since his injury in October 1989. He claims to have virtually constant pain on his entire right side. (Tr. 54). To alleviate the pain, Fuller takes Tylenol and Advil. He cannot afford prescription medication; however, the over-the-counter medication helps "a little." (*Id.*). Fuller testified that he can walk two blocks, can stand for half an hour, and can sit for half an hour before pain forces him to change position or lie down. (Tr. 45–47).

Finally, at the hearing a vocational expert, Edna Clarke, testified as to employment available in the national economy for a person with Fuller's condition, age, education, and work experience. Ms. Clarke gave several examples of employment available for a high school graduate who could lift and carry fifteen pounds occasionally, stand and walk for up to two hours, can sit for an unlimited time, push and pull on a limited basis, avoiding heavy objects. These jobs included a timekeeper in the clerical field, a button sorter, a ticket seller, a hosiery mender, and a laundry pricing clerk. Each of these jobs exists in the national economy in excess of 10,000 and in the local economy in excess of 500. (Tr. 86–87).

## II.  DISCUSSION

### A.  *Determining Disability*

A claimant is entitled to disability benefits under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). The impairment must be of such severity that the claimant

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Secretary has promulgated regulations establishing a five-step procedure for evaluating disability claims. 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit summarized this procedure as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *see also Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987).

The claimant bears the burden of proof with regard to the first four steps; the Secretary bears the burden of proof as to the last step. *Berry,* 675 F.2d at 467.

**B.  *Scope of Review***

The standard of review in evaluating disability claims is whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *see also Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted). Also, the Secretary's failure to apply proper legal standards or to provide a full and fair hearing are grounds for judicial review. *Berry,* 675 F.2d at 467.

Thus, the Secretary's decision is afforded considerable deference; the reviewing court should not "substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (*quoting Valente v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984)).

**C.  *The Secretary's Determination***

The ALJ methodically proceeded through each of the five steps enunciated in *Berry.* Ultimately, the ALJ concluded that, although Fuller could not return to his past work, he had the residual functional capacity to perform a full range of sedentary work. Based on this finding and Fuller's age, education, and work experience, regulations promulgated by the Secretary directed a conclusion that Fuller was not disabled within the meaning of the Act. (Tr. 19 (*citing* 20 C.F.R. §§ 404.1569 and 416.969)). Fuller's principal arguments in this appeal are that, in reaching this conclusion, the ALJ (1) committed legal error in discrediting Fuller's subjective claims of pain; (2) committed legal error in discrediting opinions from various medical personnel; (3) improperly found that the Secretary had sustained her burden of showing residual employment opportunities in the national economy; and (4) deprived Fuller of a full and fair hearing by denying him access to his claim file.

### 1. *Plaintiff's Credibility*

■ It is beyond dispute that an ALJ need not blindly accept a claimant's subjective claims of pain. "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of [a claimant's] pain." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979); *see also Mimms v. Heckler,* 750 F.2d 180, 186 (2d Cir.1984); *McLaughlin v. Secretary of Health, Educ. & Welfare,* 612 F.2d 701, 705 (2d Cir.1980).

■ Here, there were substantial medical findings and other evidence in the record to support the ALJ's credibility determination. The ALJ found that Fuller's activities and medications belied his subjective complaints of pain. Fuller testified that he went to church once a week and took the bus and subway to his medical appointments. (Tr. 33, 35, 58). Also, he obtained some relief from over-the-counter medications such as Tylenol and Advil. (Tr. 54). His only other treatments were ice a heating pad, and an occasional massage. (Tr. 56).

In addition, I note that the record provides substantial medical evidence supporting the ALJ's conclusion. Dr. Weitz concluded that Fuller had a sprained back and specifically found that there was no evidence of a herniated disc. (Tr. 190). Similarly, Dr. Spindel diagnosed Fuller as having "resolving" strain (Tr. 347), and noted improvement in Fuller's condition after treatment with ice. (Tr. 193). Dr. Spindel also noted that Fuller failed to complete his home therapy regimen, which contributed to his continuing pain. (Tr. 192). Dr. Gladstone determined that Fuller had mild spasm and mildly reduced lumbar motion. (Tr. 206, 212). Furthermore, Dr. Gladstone concluded that Fuller could lift up to fifteen pounds, could stand for two hours and could sit for an unlimited period of time. (Tr. 214).

This medical and other evidence constitutes substantial evidence supporting the ALJ's independent determination that Fuller's complaints of pain were not credible to the extent alleged. Accordingly, the ALJ did not commit legal error in disregarding Fuller's subjective complaints of pain.

### 2. *Treating Physician Rule*

■ Under the treating physician rule, as it currently exists,[4] more weight is accorded a treating physician's opinion than a consulting physician's opinion as long as the treating physician's opinion is supported by medical evidence and is not inconsistent with substantial other evidence in the record. 20 C.F.R. § 404.1527(d)(2). In determining whether a doctor is a treating physician, consideration will be given to the nature of the doctor/patient relationship, including the length of that relationship. *Diaz v. Shalala,* 59 F.3d 307, 313 n. 5 (2d Cir.1995); *Schisler,* 3 F.3d at 568. Opinions of nonexamining sources may override those of treating sources only if supported by substantial evidence in the record. *Diaz,* 59 F.3d at 313 n. 5.

The ALJ's application of the rule was not without error, as it deemed Dr. Spindel a "one-time examining physician." (Tr. 15). In fact, as noted above, Dr. Spindel examined Fuller on at least ten different occasions. (Tr. 192–200, 346–47).

■ Despite this error, the ALJ properly evaluated and credited the various medical opinions. None of Fuller's treating physicians, Dr. Spindel, Dr. Gladstone, Dr. Owens, and Dr. Weitz, reached the conclusion that he was disabled. In fact Dr. Gladstone's report plainly supports the ALJ's finding that Fuller could perform a full range of sedentary work. Dr. Gladstone stated that Fuller could lift fifteen pounds, stand and walk for up to two hours, sit for an unlimited period, and push and pull on a limited basis. (Tr. 214). Only the report issued by Dr. MacPeek, a one-time consulting physician, controverts these conclusions. Given the support in the record for Dr. Gladstone's opinion, Dr. MacPeek's opinion cannot override it.

---

4. In August 1991, the Secretary promulgated new regulations which modified the treating physician rule as it existed in this Circuit. The modified regulations are binding on this Court. *Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir. 1993).

218

As for Dr. Weitz's conclusion that Fuller "remained disabled" until his pain subsided, the record indicates that this conclusion refers to his past work in the construction industry. Specifically, Dr. Gladstone noted that she tried to discuss vocational rehabilitation with Fuller, but Fuller stated that "he would prefer to resume construction work." (Tr. 310). At best, Dr. Weitz's statement is inconclusive and thus does not detract in any way from Dr. Gladstone's conclusions concerning Fuller's residual functional capacity. Accordingly, the ALJ did not commit any reversible legal error in evaluating the various medical opinions available in this case.

### 3. *Secretary's Burden*

As noted previously, once a claimant satisfies his burden of showing that he cannot return to his previous employment, the burden shifts to the Secretary to show that some employment opportunity exists in the national economy. The Secretary satisfied this burden by concluding that Fuller retained the capacity to perform a full range of sedentary jobs that did not require transferable skills. In this circumstance, the medical vocational guidelines mandate a finding of "not disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

■ Fuller's argument that the vocational expert's testimony was inadequate and that the ALJ's hypothetical was improper is inapposite. As discussed above, the ALJ correctly discredited Fuller's subjective complaints of pain. As such, the claimant did not suffer from nonexertional impairments that significantly diminished his work capacity beyond that caused by his back injury. *Bapp v. Bowen*, 802 F.2d 601, 603–04 (2d Cir.1986). In such a situation, the ALJ was not required to adduce the testimony of the vocational expert, as the Secretary's medical vocational guidelines adequately reflected Fuller's condition and directed a conclusion of "not disabled." 20 C.F.R. § 404.1569a and Pt. 404, Subpt. P, App. 2; *see also Bapp*, 802 F.2d at 603 (if medical vocational guidelines adequately reflect a claimant's condition, vocational expert is unnecessary); *Decker v. Harris*, 647 F.2d 291, 298 (2d Cir.1981) (although courts prefer the calling of a vocational ex-

pert, "judicial decisions have stopped short of establishing a *per se* rule requiring such testimony").

Nevertheless, the ALJ called a vocational expert, Edna Clarke. Ms. Clarke provided several examples of unskilled and semi-skilled sedentary jobs that are available in the national and local economies for a person with Fuller's condition, age, education, and work experience. Furthermore, the ALJ considered Fuller's nonexertional limitations, namely his pain, in finding that the employment opportunities that Ms. Clarke suggested were adequate. Accordingly, the Secretary satisfied her burden of showing that such jobs exist in the national economy.

### 4. *Access to Files*

Finally, Fuller claims that he was denied a full and fair hearing by failing to receive the actual claim file maintained by the Secretary. Fuller does not allege that he was actually denied access to any particular document or documents contained in the claim file. Rather, he contends that his inability to review the "raw" file folder constitutes a deprivation of a full and fair hearing. I disagree. The ALJ complied with the procedures for conducting a disability hearing as set forth in the Code of Federal Regulations. 20 C.F.R. §§ 404.916, 416.1416. Moreover, Fuller does not allege that he was deprived of any particular documents. In fact, my review of the record indicates that Fuller had access to every document that was material to the ALJ's decision. As such, I conclude that Fuller was provided a full and fair hearing.

### III. *CONCLUSION*

For the reasons set forth above, Fuller's motion for judgment on the pleadings is denied. Defendant's cross-motion for judgment on the pleadings is granted. The final determination of the Secretary is affirmed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.