Sara PAGAN, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 99 Civ. 1660 (RMB).

United States District Court, S.D. New York.

June 1, 2000.

Sara Pagan, Bronx, NY, pro se.

Linda A. Riffkin, Asst. U.S. Atty., New York City, for Defendant.

### ORDER

BERMAN, District Judge.

On December 8, 1999, pro se Plaintiff Sara Pagan ("Plaintiff" or "Pagan") commenced this action pursuant to Social Security Act § 205(g), 42 U.S.C. § 405(g), seeking review of denial of disability benefits by the U.S. Commissioner of Social Security, Kenneth S. Apfel ("Commissioner"). On or about March 22, 2000, Defen-

dant Commissioner moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The record does not indicate whether the Plaintiff filed a response to the Commissioner's motion. **For the reasons set forth below, the Commissioner's motion is denied without prejudice, and the case is remanded to the Commissioner for further development of the administrative record.**

### I. Background

Plaintiff's application for disability benefits (Supplemental Security Income), dated May 25, 1995, was denied initially on October 12, 1995 and also upon reconsideration on November 20, 1995. (Tr. at 57–59, 84–87, 99–102). On August 9, 1996, Plaintiff participated in a hearing before Administrative Law Judge ("ALJ") Margaret M. Kern to review the denial of her claim. (Tr. at 31–56). The ALJ found, on December 20, 1996, that the Plaintiff was not "disabled" (Tr. at 12–29). Thereafter, the Plaintiff timely requested that the Appeals Council review the ALJ's decision. (Tr. at 9). The Appeals Council denied Plaintiff's request for review on October 8, 1998, concluding that there was "no basis under the ... regulations for granting [her] request for review." (Tr. at 4–6).[1]

### II. Analysis

Under 42 U.S.C. § 405(g), "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action." *Id.* The scope of the district court's review is limited. That is, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and ... the court shall review only the question of conformity with ... regulations."

---

1. According to Social Security Administration regulations, the Appeals Council will grant a review where "(1) there appears to be an abuse of discretion by the Administrative Law Judge; (2) there is an error of law; (3) the Administrative Law Judge's action, findings, or conclusions are not supported by substantial evidence; or (4) there is a broad policy or procedural issue which may affect the general public interest." 20 C.F.R. § 416.1470.

*Id. See, e.g., Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999) (court cannot review case de novo to determine whether a plaintiff is disabled); *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996). The reviewing court will uphold the Commissioner's assessment unless it manifests legal error or lacks sufficient supporting evidence. *See* 42 U.S.C. § 405(g). *See also Rosa,* 168 F.3d at 77. "Substantial evidence" constitutes "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted), quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (citation omitted).

The Commissioner must follow a five-step sequential evaluation to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(b). The Second Circuit has articulated this inquiry as follows:

First, the Commissioner determines whether the individual is doing substantial gainful work. If she is not, the Commissioner then determines whether she has a severe impairment that limits her ability to do work-related activities. If such an impairment exists, the Commissioner then considers medical evidence to determine if the impairment meets or equals the criteria of an impairment listed in Appendix 1 to 20 C.F.R. Pt. 404, Subpt. P. (the "Listing of Impairments"). If the impairment does not meet or equal a listed impairment, the Commissioner proceeds to the fourth step and analyzes whether the impairment prevents the individual from doing her past work. Finally, if an individual cannot perform her past work, the Commissioner determines whether her impairment prevents her from doing any other work. If so, the Commissioner finds the individual disabled.

*Williams v. Apfel,* 204 F.3d 48 (2d Cir. 1999) quoting 20 C.F.R. § 404.1520.

In the instant case, the ALJ employed the five-step (legal) analysis. She determined that the Plaintiff had not participated in any substantially gainful work since some point in 1993. (Tr. at 17). The ALJ then found the Plaintiff's impairments—i.e. asthma and dysthymia—were sufficiently "severe" to impose "significant restrictions in [her] ability to perform basic work activities." (Tr. at 17). However, the ALJ did not find that the Plaintiff's impairments met or equaled the criteria set out in Appendix 1 of the Secretary's guidelines. (Tr. at 17). The ALJ also determined that the Plaintiff would be unable to return to her past work as a house cleaner since she "worked with cleaning fluids and other environmental irritants." (Tr. at 24). The Plaintiff "would be unable to work while exposed to chemical fumes." (Tr. at 24). Finally, the ALJ concluded that neither the Plaintiff's impairments nor her "age, educational background and work experience" would prevent her from performing other work, since she remains "capable of performing almost a full range of light work" and suitable jobs exist "in significant numbers in the national economy." (Tr. at 17, 26, 25). She denied the Plaintiff's claims, finding that Plaintiff was not "under a disability, as defined in the Social Security Act, at any time through the date of [the] decision." (Tr. at 26). As noted, the Appeals Council concluded that there was "no basis ... for granting ... review." (Tr. at 4).

### III. Evidentiary Record

**Treating Physicians**

In reaching her decision, the ALJ appears to have discounted the opinions of two of the Plaintiff's treating physicians, namely those of Dr. Francisco Rodriguez, staff psychiatrist at Fordham Tremont Community Mental Health Center, and of Dr. Dan O'Connell, a practitioner at West Farms Family Practice. (Tr. at 20–21). On April 16, 1996, Dr. Rodriguez, who had been treating the Plaintiff for roughly a year by the time of the hearing before the

ALJ, opined that the Plaintiff was "unable to maintain by herself the tasks of daily living. Handling the pressures of work would be impossible . . . given the intensity of her depressive and anxiety symptoms." (Tr. at 44, 177). The ALJ determined that Dr. Rodriguez's opinion was not "supported by the evidence of the record." (Tr. at 21). That is, a prior evaluation of Plaintiff conducted at the same mental health facility found the claimant to be "functioning with little, if any, psychiatric impairment." (Tr. at 21). The ALJ found that moving "from a generally positive assessment to a finding that the claimant had a complete inability to function in work-like setting is inconsistent." (Tr. at 21).

Notwithstanding Dr. Rodriguez's conclusions, there exists some evidence, as the ALJ concluded, that the Plaintiff was in good psychological health. For example, on September 15, 1995, Dr. Alain de LaChappelle conducted a consultative psychiatric evaluation of the Plaintiff at the request of the Office of Disability Determinations. (Tr. at 157–158). Dr. de La Chappelle stated that "the claimant has a satisfactory ability to understand, carry out and remember instructions, and a satisfactory ability to respond appropriately to supervision, coworkers and work pressures in a work setting." (Tr. at 153). Similarly, Dr. Peter Kuber, a state agency review physician, reported, on October 11, 1995, that the Plaintiff exhibited "adequate cognitive, copy and social skills necessary for sustained work." (Tr. at 73).

The Commissioner also found the opinion of treating physician Dr. O'Connell (that the Plaintiff could "barely lift 10 pounds and would be unable to stand for six hours") was not persuasive. (Tr. at 21). Dr. O'Connell treated primarily the Plaintiff's asthma and respiratory ailments. (Tr. at 47, 171–172). The ALJ seems to have determined that Dr. O'Connell's conclusions lacked support in the medical record. (Tr. at 21). The doctor had "neither diagnosed nor treated any other physical condition that would account for the severe level of impairment that he . . . described in his assessment." (Tr. at 21).

Yet there does appear to be evidence in the record supportive of Dr. O'Connell's findings of physical disability. For example, during her hearing with the ALJ, the Plaintiff testified that she has had six operations on her spine and that she experiences physical pain during work. (Tr. at 44). Similarly, Plaintiff stated that she had "problems with back disk operations, allergy problems, . . . [and] problems getting up from bed." (Plaintiff's Complaint at 1). In a report dated August 30, 1995, Dr. Eliman of Kings—M.D. Medical Services noted that the Plaintiff's "[h]istory of back pain [was] correlated on physical examination." (Tr. at 143).

Hearings, especially those involving pro se claimants, are an opportunity for the ALJ to scrupulously explore and probe for relevant facts. *See Mimms v. Heckler,* 750 F.2d 180, 185. While it is true that the ALJ considered (six) available medical records, (Tr. 16–26). *See Snell,* 177 F.3d at 133–35, and reviewed some 202 pages of materials, (Tr. at 1–202). *See Lopez v. Apfel,* 2000 WL 633425 at 9 (S.D.N.Y. 2000) (eleven-page record deemed insufficiently developed), it is uncertain if adequate weight was given to the opinions of Plaintiff's treating physicians.

Generally, the opinion of a treating physician should be given "controlling weight," since such persons are "most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(d)(2). *See also, Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999). Testimony from the treating physician will carry more weight if he or she was caring for the claimant during the time in question. *Roy v. Apfel,* 1999 WL 1295361 at 3, 1999 U.S.App. LEXIS 36986, at *3 (2d Cir. 1999). The "[l]ength of treatment rela-

tionship and the frequency of examination" contribute to the weight carried by treating sources. 20 C.F.R. § 404.1527(d)(2)(i). However, such weight depends on the support of "medically acceptable clinical and laboratory diagnostic techniques" as well as the congruity with "other substantial evidence." *Id. See, e.g., Rosa v. Callahan,* 168 F.3d 72, 78–79; *Roy,* 1999 WL 1295361 at 3, 1999 U.S. App. Lexis at 3. The Commissioner can base his decision on the currently available evidence when "inconsistencies in the evidence ... cannot be resolved." 20 C.F.R. § 404.1527(c)(4). At the very least, the Commissioner must give express recognition to a treating source's report and explain his or her reasons for discrediting such a report. *Snell,* 177 F.3d at 134.

█ Here, it appears the ALJ primarily relied upon the findings of Dr. Alain de La Chappelle, a consulting psychiatrist, "whose only contacted [sic] with Ms. Pagan was for a brief few minutes." (Tr. at 202). In light of the treating physicians' knowledge of the Plaintiff's medical record, it would appear that their opinions should have carried more weight with the ALJ. In any event, the ALJ should (more explicitly) articulate the reasons why she discounted Dr. Rodriguez's and Dr. O'Connell's findings that the Plaintiff suffers from "marked" restriction of daily living, "severe" deficiencies of concentration, and "marked ... [e]pisodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from that situation or to experience exacerbation of signs and symptoms." (Tr. at 176). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for a remand." *Snell,* 177 F.3d at 133.

It should also be noted that, while claimant's depression and mobility problems may not be independently disabling, under Social Security regulations, a claimant may be considered disabled because of a combination of ailments. *See id.* at 136 (Appeals Council should consider combined impairment when "record contains no findings about the possibility of such a[n] ... impairment"). The record here does not appear to include findings pertaining to such a combined disability; upon remand, these should be included.

## IV. Conclusion

For the reasons stated, the matter is remanded to the Commissioner for further evidentiary proceedings. *See Collado v. Apfel,* 2000 WL 257157 at 1 (S.D.N.Y. 2000). Remand will allow the Commissioner, among other things, to further assess the significance of the opinions of Plaintiff's treating physicians and to determine whether the Plaintiff suffered from a combined disability. The Commissioner's motion for judgment on the pleadings is, therefore, denied without prejudice [10] and the case remanded to the Commissioner for further development of the record as set forth herein.