**Alfred MIMMS, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant-Appellee.**

**No. 238, Docket 84–6173.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1984.

Decided Dec. 7, 1984.

Ian Feldman, New York City (Kalman Finkel, David Goldfarb, The Legal Aid Society, Civil Division, New York City, of counsel), for plaintiff-appellant.

Donna H. Lieberman, Sp. Asst. U.S. Atty., S.D.N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Jane E. Booth, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for defendant-appellee.

Before OAKES and WINTER, Circuit Judges, and CLARIE, District Judge.*

CLARIE, District Judge.

Alfred Mimms appeals from the judgment of the United States District Court for the Southern District of New York, Gagliardi, J., upholding the denial by the Secretary of Health and Human Services of Mimms' application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–31. Having found that the Administrative Law Judge failed to adequately develop the record and that the Secretary failed to establish the existence of substantial gainful employment which the claimant is capable of performing, we remand this matter to the Administrative Law Judge, so that he may make a redetermination of appellant's eligibility for disability benefits consistent with this opinion.

I.

*Background*

Mimms was born in West Virginia on May 16, 1929, and advanced through the ninth grade. Prior to 1960, his employment history is somewhat sketchy. From

* Honorable T. Emmet Clarie, Senior United States District Judge for the District of Connecti-     cut, sitting by designation.

1960 to 1970, Mimms had worked primarily as a truck driver and pipe layer for a construction company. From 1970 to 1978, he was employed as a truck driver for a different employer. After leaving that position, the appellant worked for U-Haul, for approximately two years, as a truck mechanic. On June 9, 1981, he was fired by U-Haul for failing to perform his duties in a satisfactory manner. He then obtained employment at a Shell service station, which employment lasted but two days. Mimms alleges that he was fired when his employer learned that he was a diabetic.

On June 19, 1981, appellant filed his present application for Social Security benefits claiming disability due to diabetes, rheumatism and arthritis. The application was denied, both initially and upon reconsideration. On April 5, 1982, a hearing *de novo* was held before an Administrative Law Judge (ALJ). Mimms, unrepresented by counsel, appeared in person to present his case. He testified about the nature of his work experience as set forth above, about his reasons for stopping work in 1981, and about his health since 1981. The record included the reports of four physicians, two treating physicians and two physicians who examined the appellant at the request of the Bureau of Disability Determination.

In a report dated July 13, 1981, Dr. Applebaum, Mimms' former treating physician, diagnosed him as suffering from diabetes mellitus and arthritis, indicating that all of the major joints were involved and that Mimms had moderate loss of mobility. Evaluating Mimms' residual functional capacity, Dr. Applebaum opined that in an eight-hour work day, the appellant could sit for four hours, stand for two hours and walk for less than one hour. He further noted that Mimms could occasionally lift up to ten pounds and that he could use his hands for repetitive actions such as grasping, pushing and pulling, but not for fine manipulations. The doctor also indicated that the appellant could not be exposed to dust, fumes and marked changes in temperature and humidity.

Mimms began treatment with Dr. Donald Cunningham in 1980 and continued visiting him for a period of two years. Dr. Cunningham noted the presence of scattered rhonchi in Mimms' lung fields and that the appellant experienced pain upon palpation of the knees, with slight swelling and increased warmth. The doctor diagnosed arteriosclerotic cardiovascular disease, angina pectoris, polyarthritis, vascular insufficiency, claudication, diabetes mellitus and bronchitis.

In a February 22, 1982, physical capacities evaluation, Dr. Cunningham opined that in an eight-hour work day, the appellant could sit for a total of four hours, stand for a total of two hours and walk for a total of two hours. He found that at any one time, the appellant could sit for one hour, stand for one hour and walk for a half hour. The doctor also asserted that Mimms could frequently lift and carry ten pounds and could occasionally lift and carry twenty pounds. The claimant was found capable of using his hands for repetitive actions such as grasping, pushing and pulling of arm controls, but not fine manipulations; nor could he use his feet for repetitive movements. He could occasionally bend and reach. Dr. Cunningham indicated that Mimms should be totally restricted from activities involving unprotected heights, proximity to moving machinery, driving automotive equipment and exposure to dust, fumes and gases.

On July 22, 1981, Dr. Sovi Joseph examined the appellant at the request of the Bureau of Disability Determination. The doctor found Mimms' blood pressure was normal, a heart examination revealed no pathology, appellant's lungs were clear. Dr. Joseph reported that his extremities show no evidence of atrophy, swelling or active arthritis and found that Mimms' movements were not limited in any of the joints and that there was no evidence of peripheral neuropathology. Evaluating Mimms' history of diabetes, the doctor observed that he did not adhere to a strict diet, nor did he take medication for the condition consistently. At the behest of

the Bureau of Disability Determination, the appellant was also given an eye examination by Dr. Victor Goodride on August 4, 1981. Dr. Goodride noted no significant findings.

At the hearing before the ALJ, the appellant testified that he had difficulty walking any distance, that he suffered from tingling sensations and numbness in both legs which extended to his toes. He indicated that he suffers pain in his right shoulder and that he experienced dizzy spells. He stated that he was hospitalized for eight or nine days in early 1982, for treatment of his diabetes and for vision problems. Mimms represented that he can see reasonably well with eyeglasses. He also stated that he suffers from severe headaches every other day or every two or three days, that he has a good appetite and is following a special, hospital-prescribed diet. He suffers from insomnia two or three nights of the week and is often drowsy during the day.

In the "Disability Report" Mimms submitted to the Department of Health and Human Services dated June 19, 1981, the appellant stated that he had previously received Social Security benefits from June, 1977 to September, 1980, because of his arthritis. He returned to work on his own initiative but was subsequently laid off because he was unable to cope with the pressures of the job. He also stated that he could perform simple jobs around the house, like hanging a picture, but could not climb more than two flights of stairs at a time.

At the hearing, the ALJ took the testimony of Eleanor Grupsmith, who was identified as a vocational counselor and therapist. After listening to the appellant testify and reviewing all the exhibits in evidence, Grupsmith described the work that Mimms had engaged in as semi-skilled, because he had to be familiar with the geography of the road, know how to use tools to do a minor repair, have eye-hand-foot coordination as well as a certain special sense to be able to maneuver his truck. She concluded that he lacked the residual functional capacity to return to any of his prior jobs, but that he possessed certain skills that could be used to perform other semi-skilled or skilled functions in a sedentary job. As examples of such jobs, Grupsmith cited gateman, hand assembler, ticketer and inspector of factory goods; admitting, however, that gateman fell into the category of light work, while she had determined Mimms was capable of only sedentary work.

The ALJ concluded that Mimms was not disabled within the meaning of the Social Security Act. He found that the appellant possessed residual functional capacity for at least sedentary work, and, taking into consideration the testimony of the vocational expert, concluded that the appellant was capable of semi-skilled jobs including gateman, hand assembler, ticketer and inspector of factory goods. Accepting the representation of the vocational expert, the ALJ found that such jobs exist in significant numbers in the geographic area where the claimant resides.

On June 21, 1982, the Appeals Council denied the appellant's request for review of the ALJ's decision and, accordingly, the ALJ's decision became the final decision of the Secretary. This case was then ripe for judicial review.

On August 11, 1982, Mimms petitioned the United States District Court for the Southern District of New York for review of the Secretary's decision, pursuant to 42 U.S.C. § 405(g). He moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and the Secretary cross-moved for judgment on the pleadings. The Court, Gagliardi, J., denied Mimms' motion and granted the Secretary's motion in a memorandum of decision dated April 11, 1984. This appeal followed.

## II.

### Statutory Framework

A claimant is considered disabled for purposes of entitlement to Social Security disability benefits when he is "unable to en-

gage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Section 423(d)(2)(A), added to the statute in 1968, provides that for the purposes of § 423(d)(1),

> "an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

The burden of proving disability is on the claimant. *Gold v. Secretary of HEW*, 463 F.2d 38, 41 (2d Cir.1972), 42 U.S.C. § 423(d)(5). However, once the claimant has established a prima facie case by proving that his impairment prevents his return to his prior employment, it then becomes incumbent upon the Secretary to show that there exists alternative substantial gainful work in the national economy which the claimant could perform, considering his physical capability, age, education, experience and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

The factors to be taken into account in reaching a conclusion as to disability are (1) objective medical facts; (2) diagnosis on medical opinions based on these facts; (3) subjective evidence of pain and disability testified to by the claimant and family or others; and (4) the claimant's educational background, age and work experience. *Gold v. Secretary of HEW*, 463 F.2d 38, 41 n. 2 (2d Cir.1972). However, it is not for a reviewing court to determine *de novo* whether the claimant is disabled. On appeal, the court's proper function is merely to determine whether the appropriate legal standards have been applied and assess whether the Secretary's findings of fact are supported by substantial evidence. *Parker v. Harris, supra,* 626 F.2d at 231.

### III.

*The Hearing Before the Administrative Law Judge*

In a case such as this, where the claimant was unrepresented by counsel in the proceedings before the ALJ, "a duty devolves on the hearing examiner to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts surrounding the alleged right or privilege." *Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir.1972). After a careful review of the transcript of the disability hearing conducted by the ALJ, we find that he failed to adequately develop the record so as to provide Mimms with a full and fair hearing. Specifically, despite the fact that the claimant testified that he had been determined disabled in June of 1977 and had received disability benefits until October 1980, when he voluntarily attempted to resume gainful employment, the ALJ failed to ask one question of the claimant about his prior disability and its relationship to the disability claim he was now pursuing before the ALJ. The existence of a prior established disability is highly relevant when the nature of that disability appears to be the very same cause of the alleged disability then under examination.

Additionally, at the hearing before the ALJ, Mimms testified that he suffers from pain in his legs and right shoulder. In his opinion, however, he held that Mimms was not disabled. The ALJ concluded "In the absence of evidence to the contrary, it is assumed that the doctor considered claimant's subjective complaints of pain in arriving at his opinion as to claimant's residual functional capacity."

This Circuit has long held that the subjective element of pain is an important factor to be considered in determining disability. *Ber v. Celebrezze*, 332 F.2d 293,

298, 300 (2d Cir.1964). While an ALJ "has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment [regarding that pain, he must do so] in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *McLaughlin v. Secretary of Health, Education and Welfare,* 612 F.2d 701, 705 (2d Cir.1980), *quoting Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

■ It is clear that the ALJ's decision to disregard Mimm's testimony concerning disabling pain was based on his blind assumption that appellant's treating physician considered such pain in determining his residual functional capacity. Especially, given the claimant's *pro se* status, we hold that the claimant's assertions of disabling pain cannot be rejected solely on the unfounded assumption that the treating physicians considered them. An ALJ is not free to assume that a factor, such as pain, was considered in formulating a medical opinion when there is no evidence that such was the case. In hearings involving *pro se* claimants, an ALJ has the duty to "inquire of," "explore for" and "probe into" the existence of relevant facts, he is not to "assume" their existence. *See Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir. 1972).[1] Whether or not the ALJ was cognizant of the claimant's responses to those questions, it is clear he did not have them before him in the form of a transcript of the hearing. Hence we deem it desirable that the information missing in the transcript be elicited on remand.

## IV.

*Claimant's Ability to Perform Alternative Substantial Gainful Work*

■ When a claimant has established that his impairment prevents his return to his prior employment, the Secretary must put forth evidence to establish the existence of alternative substantial gainful work which the claimant could perform. At the hearing, a vocational expert was called by the ALJ to review the evidence in the claimant's case and assess whether he was capable of substantial gainful employment. The expert opined that, considering claimant's age, past work experience and impairments, he could transfer his existing skills to sedentary, semi-skilled positions. The vocational expert then proceeded to name four jobs, existing in the national economy, which she claimed Mimms could perform (i.e., gateman, hand assembler, ticketer and inspector).

Although both the ALJ in his opinion, and the vocational expert in her testimony at the hearings, concluded that the claimant's vocational capacity was for *sedentary,* semi-skilled positions, the jobs selected by the expert and relied upon by the ALJ, as being appropriate, require the capacity to perform *light* work. *See Dictionary of Occupational Titles,* United States Dept. of Labor (4th ed. 1977), at 39 (gate tender); *id.* at 148 (light inspector); *id.* at 149 (toy inspector); *id.* at 200 (hand assembler); and *id.* at 212 (ticketer). Consequently, we must conclude that the Secretary failed to demonstrate the existence of substantial gainful employment of a sedentary nature, which the claimant was capable of performing.

*Conclusion*

For the reasons set forth above, we remand to the Secretary for a redetermination of the claimant's eligibility for disability benefits consistent with this opinion.

---

1. Finally, we note in passing a further troubling aspect of the hearing before the ALJ. The transcript of the claimant's testimony before the ALJ reveals ten instances where the court reporter has marked Mr. Mimms' responses to the ALJ's questions as "inaudible." These gaps total in excess of five minutes of testimony on such significant questions as "black-outs" the claimant had been experiencing while walking on the street.