Antonia SANCHEZ, Plaintiff,

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. 03 Civ. 0082(VM).

United States District Court, S.D. New York.

Aug. 6, 2004.

Antonia Sanchez, Bronx, NY, Pro se.

William Peairs Gottlieb, Axelrod and Gottlieb, New York City, for Plaintiff.

Susan D. Baird, Assistant U.S. Attorney, New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Antonia Sanchez ("Sanchez") brought this action for review of the final determination by the Commissioner of Social Security (the "Commissioner") denying

her claims for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"), 42 U.S.C. § 405(g) (" § 405(g)"). Sanchez now moves for judgment on the pleadings and the Commissioner makes an identical cross-motion. The Court concludes that the Administrative Law Judge ("ALJ") failed to fully develop the record before issuing his decision, as he was obligated to do, and that the vocational expert erred in making recommendations to the ALJ as to the availability of employment. Accordingly, the Court grants Sanchez's motion to remand this matter to the Commissioner pursuant to § 405(g) for further proceedings and denies the Commissioner's cross-motion.

## I. *BACKGROUND* [1]

On May 25, 2000, Sanchez applied for SSI benefits on the grounds that she suffered from depression, migraine headaches, and body pain. Her claim was denied initially and on reconsideration. She then requested a hearing before an ALJ, which took place on March 12, 2002. Sanchez appeared at the hearing *pro se* and spoke through a Spanish interpreter.

Medical evidence and testimony from the hearing describes Sanchez's history of treatment for psychological and physical illnesses from April 1998 to March 2002. The record reflects diagnoses from Sanchez's treating physicians and the Commissioner's consulting physicians. The medical reports reveal similar findings, namely major depression and some limitations to her ability to perform work-related activities. The record, however, contains one

diagnosis of fibromyalgia,[2] reflected in the documents from the Hospital for Joint Diseases ("HJD") that Sanchez presented to the ALJ. This diagnosis was the most recent one made prior to the hearing.

Vocational expert Bala Carr ("Carr") testified at the hearing that a person with Sanchez's characteristics and limitations would be unable to perform her past job as a window assembler because the work requires a medium level of physical exertion and she is now limited to a light exertion level. Because Sanchez had no other past work experience to consider, Carr proceeded to identify four jobs that Sanchez could perform pursuant to the Dictionary of Occupational Titles ("DOT"). Carr asserted that a hypothetical person with Sanchez's characteristics could work as an office cleaner, a laundry worker, a bagger, or a linen supply worker. Carr testified that each of these jobs has a low exertional level and that her testimony did not conflict with the DOT definitions or standards.

At the end of the hearing, the ALJ stated that he did not have all the necessary medical treatment information from the HJD and would subpoena those records. The HJD, however, did not respond to the subpoena. The ALJ did not inform Sanchez of HJD's failure to respond, nor did the ALJ further pursue the medical records from the HJD.

On June 12, 2002, the ALJ denied Sanchez's SSI application. The ALJ adopted Carr's conclusion that Sanchez would be able to perform the various jobs in the

---

1. The facts are derived from the administrative record, which, except where necessary, the Court will not cite further.

2. Fibromyalgia is a syndrome of chronic pain of musculoskeletal origin but uncertain cause. *See Stedman's Medical Dictionary* 671 (27th ed.2000). The muscle pain is aggravated by inactivity or exposure to cold. *See* Medical

Dictionary Online, *available at* http://www.on-line-medical-dictionary.org/?q=fibromyalgia. Fibromyalgia is also often associated with general symptoms such as sleep disturbances, fatigue, stiffness, headaches, and occasionally depression. *Id.* It is most frequent in females aged 20 to 50 years. *Id.*

local and national economy that Carr described. The ALJ determined that because those jobs existed in sufficient numbers in the local and national economy, Sanchez was not disabled under the relevant regulations.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■ Under the Act, "the [federal district] court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's scope of review of a disability determination entails two steps of inquiry. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir.1998); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir.1987). First, the Court must decide "whether [the agency] applied the correct legal principles in making the determination," and second, "whether the determination is supported by 'substantial evidence.'" Johnson, 817 F.2d at 985 (quoting 41 U.S.C. § 405(g)).

■ Under the second prong of this test, "the term 'substantial' does not require that the evidence be overwhelming, but it must be 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Miller v. Barhart, 01 Civ. 2744, 2004 WL 1304050, at *5 (S.D.N.Y. May 6, 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Where substantial evidence does exist, "the Commissioner's determination of fact is conclusive," even where the reviewing court disagrees. Gonzalez ex rel. Gonzalez v. Barnhart, 03 Civ. 6607, 2004 WL 1460634, at *2 (S.D.N.Y. June 28, 2004). Thus, the reviewing court is precluded

from undertaking a de novo review. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir.1991).

### B. DISABILITY DETERMINATIONS

The Act defines disability as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The effect of the physical or mental impairment must be:

> of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Commissioner must apply a five-step procedure to asses disability claims. See 20 C.F.R. § 404.1520(a)(4). The Second Circuit has described the process as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner]

will consider him disabled without considering vocational factors such as age, education, and work experience ... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999) (quoting *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982)).

At any step, if the Commissioner can make a finding that the claimant is disabled or not disabled, he must do so and the process need not continue. *See* 20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make such a determination, then he must continue to the next step. *Id.* The burden of proving the first four steps falls on the claimant, but if the process proceeds to the fifth step, the Commissioner must prove that the claimant can make an adjustment to other work. *See DeChirico v. Callahan,* 134 F.3d 1177, 1180 (2d Cir.1998); *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996).

Ordinarily, "the Commissioner meets his burden at the fifth step 'by resorting to the applicable medical vocational guidelines,'" which are found in 20 C.F.R. § 404, Subpt. P, App. 2 and are commonly known as the "grid." *Rosa,* 168 F.3d at 78 (quoting *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986)). The grid divides work types into five broad categories based on the exertional requirements of different jobs.[3] *See Cosgrove v. Barnhart,* No. 01 Civ. 2632, 2004 WL 1171772, at *5 (S.D.N.Y. May 6, 2004). The grid indicates "whether the claimant can engage in any substantive gainful work existing in the national economy" by considering "the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Id.* (internal quotations and citation omitted). Where all medical criteria within the grid's analysis are met, the grid is normally "dispositive." *Id.; see also Thomas v. Barnhart,* No. 01 Civ. 518, 2002 WL 31433606, at *3 (S.D.N.Y. Oct. 30, 2002).

■ But "[w]here any one of the findings of fact does not coincide with the corresponding criterion of a rule," exclusive reliance on the grid is inappropriate. 20 C.F.R. § 404, Subpt. P, App. 2, 200.00(a). Under such circumstances, "full consideration must be given to all of the relevant facts of the case." *Id.* In addition, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp,* 802 F.2d at 603. In making such a determination, the expert can rely on information available from governmental and other publications, such as the DOT. *See* 20 C.F.R. §§ 404.15.66(d), 416.966(d). The ALJ must pose hypothetical questions to the vocational expert which reflect the full extent of the claimant's capabilities and impairments to provide a sound basis for the VE's testimony. *See De Leon v. Sec'y of Human Services,* 734 F.2d 930, 936 (2d Cir.1984); *Aubeuf v.*

---

**3.** The Act classifies physical exertion requirements of work in the national economy into the following categories: sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 416.967. Furthermore, the Act defines exertional limitations as those affecting only the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." *Id.* § 404.1569a(b). In contrast, nonexertional limitations involve a claimants "ability to meet the demands of jobs other than the strength demands." *Id.* § 404.1569a(c)(1).

*Schweiker,* 649 F.2d 107, 114 (2d Cir.1981). There must, however, be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker,* 712 F.2d 1545, 1554 (2d Cir.1983). Ultimately, however, the ALJ is solely responsible for determining the claimant's capabilities on all of the evidence. *See id.*

## C. *APPLICATION*

There is no dispute between the parties as to the first four steps of the ALJ's disability determination. As for the fifth step, whether substantial evidence exists to support the ALJ's findings that work exists in sufficient numbers in the national economy that Sanchez could perform, Sanchez presents two issues: (1) whether the ALJ adequately developed the record; and (2) whether Carr erred in making her recommendation to the ALJ. *See* 20 C.F.R. § 416.920(f).

### 1. *The ALJ's Failure to Obtain All Evidence*

■ Sanchez first claims that the ALJ did not fulfill his heightened duty to her as a *pro se* claimant who spoke little English because he failed to further pursue his subpoena of her medical records from her treating physicians at the HJD. The Commissioner counters that the ALJ based his decision on substantial evidence in the form of voluminous doctor evaluations, and that the ALJ satisfied his duty to develop the record by attempting to obtain the HJD records through his subpoena. The Commissioner, however, misinterprets the substantive breadth and scope of the ALJ's duty.

Mere facial application of the two-pronged scope of review for disability determinations, namely whether the ALJ applied the correct legal principles and whether the determination was supported by substantial evidence, would lend credence to the Commissioner's position. *See Johnson,* 817 F.2d at 985. Neither party contests that the ALJ applied the appropriate legal principles in making his determination and, with the abundance of medical documentation, it would seem that the ALJ fulfilled his burden of supporting his determination with "substantial evidence," as that term is defined by the Supreme Court. *See Richardson,* 402 U.S. at 401, 91 S.Ct. 1420 (stating that substantial evidence requires only "more than a mere scintilla [of evidence].").

■ The ALJ, however, is bound not only to these two levels of inquiry, but also to the procedural obligations that the Commissioner's regulations impose. *See Thomas,* 2002 WL 31433606, at *4. An ALJ has an "affirmative obligation to develop the claimant's medical history" in cases "where there are deficiencies in the record." *Rosa,* 168 F.3d at 79; *see also* 20 C.F.R. § 404.1512(d) ("Before [the ALJ] make[s] a determination that [the claimant is] not disabled, [the ALJ] will develop [the claimant's] complete medical history ... [and] will make every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources when [the claimant] give[s] [the ALJ] permission to request the reports"); *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir.1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the physician] sua sponte."). Accordingly, "an ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him." *Thomas,* 2002 WL 31433606, at *4 (emphasis in original).

■ Furthermore, where a claimant appears before the ALJ *pro se,* "the ALJ is

under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990) (quoting *Echevarria v. Sec'y of Health & Human Services,* 685 F.2d 751, 755 (2d Cir.1982)). The ALJ is under an equally heightened duty where the claimant is in ill health or unable to speak English.[4] *See Cruz v. Heckler,* 593 F.Supp. 45, 51 (S.D.N.Y.1984).

As applied to the present case, Sanchez was first diagnosed with fibromyalgia by the HJD. Sanchez's prior evaluations by her other treating physicians and the Commissioner's physicians failed to make any mention of fibromyalgia. The HJD documents in the record, however, did not elaborate upon Sanchez's condition other than to describe her physical pains and the medications prescribed. Sanchez submitted the documents in her possession from the HJD to the ALJ. The ALJ appropriately recognized that he might not have all of the relevant information from the HJD, and he told Sanchez that he would subpoena all of her records from the HJD. The ALJ obtained a waiver from Sanchez so that he could directly review the records. The HJD, however, never responded to that subpoena. The ALJ did not notify Sanchez of the HJD's failure to respond to the subpoena, nor did he pursue the matter further with the HJD before issuing his decision.

The record is not clear as to whether further medical records exist regarding Sanchez's fibromyalgia diagnosis. Nonetheless, the Court must remand this case because it was the ALJ's duty to clarify that ambiguity. Merely issuing a subpoe-na by mail is not the legal equivalent of making "every reasonable effort" to obtain the medical reports. *See* 20 C.F.R. § 404.1512(d). The ALJ's actions are particularly disconcerting considering the Second Circuit's treatment of social security claimants diagnosed with fibromyalgia. In *Green–Younger v. Barnhart,* 335 F.3d 99 (2d Cir.2003), and *Lisa v. Sec'y of Dep't of Health & Human Services,* 940 F.2d 40 (2d Cir.1991), the Circuit Court noted the immense difficulties involved in making an objective medical diagnosis of fibromyalgia despite the disabling effect and unremitting pain the patient feels. Thus, in the present case, the HJD diagnosis may potentially explain the failure of Sanchez's previous treating physicians and the Commissioner's consulting physicians to make the fibromyalgia diagnosis.

Furthermore, under the circumstances of this case the ALJ was obligated, at a bare minimum, to inform Sanchez of the HJD's failure to respond, and allow her an opportunity to retrieve the necessary information. Although the Court does not accept Sanchez's categorical argument that an ALJ must *always* inform a *pro se* claimant of his proposed rejection of medical evidence in the record and allow the claimant to submit a more detailed statement, *see Infante v. Apfel,* No. 97 Civ. 7689, 2001 WL 536930 (S.D.N.Y. May 21, 2001) (stating that Second Circuit case law does not create an "absolute duty on the ALJ to inform a *pro se* claimant of a proposed action and give the claimant an opportunity to obtain more detailed medical reports ...."), the Court agrees that in

---

4. Sanchez's brief misinterprets the legal standard set forth in *Cruz.* Sanchez relies on *Cruz* for the proposition that the ALJ's duty of inquiry to claimants who are unable to speak English is further increased beyond that applicable to *pro se* claimants. The court in *Cruz,* however, placed both types of claimants on an equal level in order to uphold the spirit of the Act in ensuring that deserving applicants are not excluded from essential coverage due to personal handicaps. *See Cruz,* 593 F.Supp. at 51.

this case, the ALJ had such an obligation and failed to fulfill it.

Here, the fibromyalgia diagnosis by the HJD not only sticks out prominently in the record, but also pertains to a severe, debilitating medical condition that unquestionably bears materially on Sanchez's disability claim, as it would on any such claim. Nonetheless, the ALJ apparently ignored this evidence when making his decision. The mere statement that Sanchez was diagnosed with fibromyalgia, with no further details, left the ALJ inadequately prepared to determine conclusively whether Sanchez is disabled. This conclusion follows especially insofar as the ALJ may not have sufficiently considered a diagnosis of an illness not previously on the record that, if verified, conceivably could have supplied a proper contributing cause or independent basis for a disability. The fact that the record contained an abundance of medical testimony from prior treating physicians and the Commissioner's physicians to support a finding that Sanchez was not disabled does not relieve the ALJ of his duty to the *pro se* claimant to "scrupulously and conscientiously probe into, inquire of, and explore for *all* the relevant facts." *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980) (emphasis added). This is particularly so in this case because Sanchez's most recent treating physician was the one who diagnosed her with fibromyalgia. Certainly, there exists an element of reasonableness in *Hankerson's* expansive standard, and it is this Court's duty to subjectively determine whether it has been met in each individual case. The Court finds that, in this case, the standard has not been met.

The Commissioner makes a final alternative defense that Sanchez has failed to demonstrate that any additional evidence from the HJD existed at the time of the ALJ's decision that was not obtained.

Sanchez, however, is under no such burden at this time. She must merely prove that the administrative record is incomplete and that the ALJ failed to fulfill his duty to adequately develop that record. Because she has satisfied this burden, remand is appropriate.

### 2. *Sanchez's Ability to Perform Substantial Work*

■ Next, Sanchez contends that, for two reasons, the ALJ improperly relied upon Carr's testimony. First, Sanchez argues that, in giving her recommendation to the ALJ on Sanchez's ability to find employment, Carr ignored the ALJ's restrictions on fingering and low stress. Second, Sanchez asserts that a person with her capabilities and limitations could not perform the DOT-defined exertional levels for the jobs of laundry worker and bagger, contrary to Carr's recommendation. At the hearing, Carr incorrectly told the ALJ that her testimony was not conflicting with the DOT's standards, and she testified that the DOT-defined jobs of laundry laborer, 361.687–018, and bagger, 920.687–014, were within Sanchez's sedentary to light exertional range, even though the DOT states that both of their strength levels are medium.

Sanchez's first charge lacks merit. The Court agrees with the Commissioner that there is a distinction between "general fingering" or "gross manipulation" and "fine fingering." The ALJ and Carr were careful to make this distinction, and Carr explicitly stated which type of fingering she was applying to the job being recommended to the ALJ. Moreover, mere common sense should make clear the necessity of such a distinction. The use of one's fingers is absolutely essential to performing many human activities, and a claimant who lacks the capacity to perform such necessary undertakings is placed in a

much different class of potential disability than is a person with Sanchez's distinct limitation of "fine fingering."

Similarly, the record does not support Sanchez's contention that Carr failed to consider the ALJ's restriction of "low stress" simply because she did not repeat the limitation before listing the recommended jobs. Because the transcript is largely unintelligible, with the ALJ and vocational expert continuously interrupting one another, Sanchez's conclusory assumption that Carr ignored the low stress restriction is without any basis.

Sanchez's second assertion, however, presents a more contentious issue. In *Jasinski v. Barnhart*, the Second Circuit explicitly rejected the "proposition that when the vocational expert's testimony conflicts with the [DOT's] description, the expert's testimony does not constitute substantial evidence to support a finding that jobs are available." 341 F.3d 182, 185 (2d Cir. 2003). But *Jasinski* did not hold that a vocational expert's testimony unconditionally constitutes substantial evidence in all cases despite conflicts with the DOT definitions.

Two notable factual differences distinguish the present case from *Jasinski*. First, in assessing the Commissioner's five-step procedure for evaluating disability claims pursuant to 20 C.F.R. § 404.1520(a)(4), the *Jasinski* court's review pertained to the Commissioner's findings as to the fourth step, *i.e.,* whether the claimant has the residual functional capacity to perform past work. In the instant case, the Court's inquiry bears solely upon the fifth step, *i.e.,* whether there is other work in the economy that the claimant could perform. This distinction is important because in *Jasinski*, the vocational expert had the opportunity to evaluate the claimant's description of the job and all the attendant subtleties that the claimant actu-

ally experienced. The vocational expert could then consider whether the claimant's present limitations foreclosed a return to those precise activities. Here, Carr was merely making a general assessment of Sanchez's ability to fill a generic job description as characterized by the DOT. Carr claimed to be inserting the hypothetical characteristics described by the ALJ into the definitions of the DOT.

Second, in *Jasinski*, the vocational expert explicitly opined on the claimant's ability to return to a past job and made clear to the ALJ the discrepancy between that job and the DOT generic job description. The vocational expert in *Jasinski* remained within the bounds of Social Security Ruling ("SSR") 00–4p, which states:

> Occupational evidence provided by a [vocational expert] ... generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on [vocational expert] ... evidence to support a determination or decision about whether the claimant is disabled.

SSR 00–4p, 2000 WL 1898704 (S.S.A.).

The most reasonable explanation in *Jasinski* was that the vocational expert was providing his professional opinion as to the exertional level of the claimant's prior job. But in the present case, Carr neither informed the ALJ of the discrepancy between her professional opinion and the DOT's description, nor provided a reasonable explanation for the conflict. Carr incorrectly characterized as light-exertional certain jobs that the DOT defines as medium light-exertional. In this manner, the present case resembles *Mimms v. Heckler,* 750 F.2d 180 (2d Cir.1984), where there existed an unexplained and direct contra-

diction between the DOT and the vocational expert's testimony apparently resulting from human error. In *Mimms*, the vocational expert testified before an ALJ at a hearing that the claimant could perform sedentary work, but then identified jobs that would have required the claimant to perform light work. The vocational expert in *Mimms* apparently did not notify the ALJ of the discrepancy between the claimant's work capacity and the potential job's physical requirements. The Second Circuit held that the Commissioner had failed to demonstrate the existence of substantial sedentary employment opportunities. *See id.* at 186.

The Court is mindful that here, Carr's mistake pertains only to two of the four jobs proffered in her testimony, and that the jobs of cleaner and linen supply loadbuilder remain facially adequate for Sanchez to perform. According to Carr's testimony, the combined number of laundry worker and bagger positions in the local and national economy amount to approximately 1,650 and 250,000, respectively, and pale in comparison to the combined 5,085 estimated local and 2,050,000 national jobs for the cleaner and linen supply load-builder positions. This Court, however, is in no position to conclude that the remaining two jobs exist in sufficient numbers in the national and local economy as to satisfy the fifth prong of the disability test and preclude remand. Carr's incorrect denial of any conflict between her testimony and the DOT effectively deprived the ALJ of an opportunity to inquire into the nature of the discrepancy and make a precise and informed decision in applying the medical evidence to the universe of jobs available in the economy, as required in the fifth part of the disability test. Accordingly, the Court will remand this case for further consideration and clarification.

## III. *ORDER*

For the stated reasons, it is hereby

**ORDERED** that the motion of plaintiff Antonia Sanchez ("Sanchez") for judgment on the pleadings to remand this case to the Commissioner of Social Security (the "Commissioner") for further proceedings is granted; and it is further

**ORDERED** that the cross-motion of the Commissioner for judgment on the pleadings is denied.

The Clerk of Court is directed to close this case, without prejudice to its being reopened in the event additional proceedings in this Court are warranted following the administrative review on remand herein directed.

**SO ORDERED.**