**Christina MERRITT, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**No. 5:12–CV–01341.**

United States District Court, N.D. New York.

Signed Nov. 2, 2015.

Howard D. Olinsky, Olinsky Law Group, Syracuse, NY, for Plaintiff.

David L. Brown, Sandra M. Grossfeld, Social Security Administration, New York, NY, for Defendant.

*MEMORANDUM AND ORDER*

WILLIAM G. YOUNG, District Judge.[1]

## I. INTRODUCTION

Christina Merritt ("Merritt") brings this action pursuant to 42 U.S.C. § 405(g). Merritt seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") to deny her application for disability insurance benefits. *See* Compl., ECF No. 1. Merritt challenges the decision of the Administrative Law Judge (the "hearing officer") that she was not disabled within the meaning of 42 U.S.C. § 1382c(a)(3)(A). Administrative R. ("Admin. R.") 16–26, ECF No. 10.[2]

### A. Procedural Posture

Merritt filed her claim on March 29, 2007 and received a denial on June 6, 2007. *Id.* at 42. Following a hearing on Septem-ber 24, 2009, the hearing officer held, on November 17, 2009, that Merritt was not disabled and was thus ineligible for benefits. *Id.* at 32. Merritt appealed. *Id.* at 348. On August 24, 2010, the Appeals Council remanded the case for further proceedings. *Id.* at 363. On remand, in his decision of January 28, 2011 the hearing officer again found that Merritt was not disabled. *Id.* at 26. Merritt again appealed, *id.* at 389, and on July 20, 2012 the Appeals Council denied review of the hearing officer's decision, *id.* at 7.

Merritt filed a complaint seeking this Court's review on August 28, 2012. Compl. On January 28, 2013, Merritt filed a brief containing her arguments for reversal and requested that this Court grant judgment in her favor based on the administrative record and pleadings. Pl.'s Mem. Law. Supp. Mot. J. Administrative R. Pleadings F.R.C.P. 12(c) ("Merritt Mem."), ECF No. 12. The Commissioner filed a brief seeking affirmance of the hearing officer's decision (likewise treated as a motion for judgment on the pleadings) on April 15, 2013. Def.'s Br. Response Pl.'s Br. ("SSA Mem."), ECF No. 16.

### B. Facts and Medical History

Over the years, Merritt worked for a number of companies assembling electronics products. Admin. R. at 417–23, Merritt began to experience pain in her hands and wrists in January 2005. *Id.* at 308. She sought medical treatment from an orthopedist, who observed bilateral carpal tunnel injuries and recommended that she stop work as of February 14, 2005. *Id.* at 309–11; *see also id.* at 416. On June 8, 2005, Merritt had surgery on her right carpal tunnel. *Id.* at 274. On November 2, 2005, Merritt had surgery on her left

---

1. Of the District of Massachusetts, sitting by designation.

2. The Administrative Record appears as ECF Nos. 10 and 10–1. In this Memorandum, all references are given using the

carpal tunnel. *Id.* at 289. Both surgeries were performed by Merritt's orthopedist, Dr. John Cambareri ("Dr. Cambareri"). *Id.* at 274, 289. Dr. Cambareri indicated that he last saw Merritt·on November·9, 2006. *Id.* at 312. Afterwards, at least during the relevant period, Merritt did not return to work outside the home. *Id.* at 416, 423. Merritt did provide care for her grandchildren for which she was paid by the Department of Social Services. *Id.* at 440–42. In addition to the carpal tunnel injury, Merritt also has· been diagnosed with degenerative and arthritic knee conditions, obesity, hypertension, asthma, diabetes, and back and shoulder pain. *Id.* at 223, 246; *see also id.* at 19–20.

In addition to Dr. Cambareri, several other medical providers have treated·or examined Merritt during the relevant period. Dr. Jennifer Kelly ("Dr. Kelly") conducted a physical examination and treated Merritt for diabetes. *Id.* at 234. Dr. Richard Byrne ("Dr. Byrne") conducted a consultative examination of Merritt on November ·27, 2006. *Id.* at 213–15. Dr. Byrne observed carpel tunnel symptoms and a "10% schedule loss of use[.]" *Id.* at 214.[3] Dr. Kalyani Ganesh ("Dr. Ganesh") conducted a consultative examination on May 17, 2007. *Id.* at 241–45. Dr. Ganesh reported "[n]o gross physical· limitation noted to sitting, standing, or the use of upper extremities." *Id.* at 244. Dr. William Mahon ("Dr. Mahon") treated Merritt for her knees and back. *Id.* at 141, 425–

26.[4] Additionally, Merritt dealt with a number of other medical providers whose opinions are not at ·issue in this proceeding.[5]

## II. LEGAL STANDARDS

### A. Standard of Review

■ This Court reviews the decision of the Commissioner denying disability benefits to determine (1) whether the Commissioner applied the correct legal standard and (2) whether the Commissioner's findings· of fact are supported by substantial evidence. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(g).

### B. Disability Standard

■ To determine disability, the Commissioner applies a five-step test: (1) "whether the claimant is currently engaged in substantial gainful activity," (2) if not, "whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities," (3) if so, "whether, based solely on medical evidence, the claimant has a [listed] impairment," (4) if not, "whether, despite the claimant's severe impairment, he has the residual functional· capacity to perform his past work," and (5) if not, "whether there is other work which the claimant could perform."' *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982).

---

**3.** This apparently refers to a classification (10%) of how impaired the claimant's·use of her hand is based on a set of guidelines for classifying symptoms of carpal tunnel syndrome issued by the New York State Workers' Compensation Board. *See id.* (referencing said guidelines).

**4.** No medical records from Dr. Mahon appear in the record.

**5.** Including the following doctors: Dr. George Ang for diabetes on January 20, 2005 and

occasionally thereafter, *id.* at 239; Dr. Peter Mariani for knee pain on July 24; 2005, *id.* at 235–38; Dr. Anthony Andrews for an eye examination on January 23, 2007, *id.* at 227; Dr. David Lehmann for knee pain and diabetes on March 8, 2007, *id.* at 223; Dr. Elvis Grandic for orthopedic care on March 16, 2007, *id.* at 221; and Dr. Thomas Hanna for back and knee pain and a physical examination on, at least, March 19, 2009, June 23, 2009, and April 8, 2010, *id.* at 318–24.

■ With respect to the first four steps, "the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir.1998) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983)). At the last step, showing other work available in the national economy, the burden shifts to the Commissioner. *Id.*

### III. THE HEARING OFFICER'S DECISION

The hearing officer found that Merritt satisfied the first step: she was not employed to the level of substantial gainful employment. Admin. R. at 19. At step two, the hearing officer found that Merritt had severe impairments related to bilateral carpal tunnel release surgery, degenerative and arthritic knee conditions, and obesity. *Id.* at 19. The hearing officer found that Merritt's hypertension, asthma, diabetes, and back and shoulder pain did not reach the level of substantial impairments. *Id.* at 19–20. At step three, the hearing officer found that the impairments were not listed impairments. *Id.* at 20–21. Before turning to steps four and five, the hearing officer found that Merritt had "residual functional capacity to perform less than the full range of light work." *Id.* at 21. At step four, the hearing officer found, considering those limitations, that Merritt could perform her past relevant work as a circuit board assembler, *id.* at 25, and thus was not disabled from February 14, 2005 through the date of the decision, January 28, 2011. *Id.* at 26.

### IV. ANALYSIS

Merritt challenges the hearing officer's decision on the grounds addressed below. This Court's review is limited to "conduct[ing] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir.2013).

### A. Failure to Develop the Record Properly

■ A hearing officer has a duty to develop the record, whether or not the claimant is represented. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996). A hearing officer need not, however, seek additional detail from a given provider if the record contains notes from that provider "adequate for the [hearing officer] to determine [the claimant's] disability." *Whipple v. Astrue*, 479 Fed.Appx. 367, 370 (2d Cir.2012). The hearing officer has a duty to seek records from treating sources, but is not hamstrung by the search's shortcomings. *Streeter v. Comm'r of Soc. Sec.*, No. 5:07–CV–858, 2011 WL 1576959, at *4 (N.D.N.Y. Apr. 26, 2011) (Scullin, J.). Rather, a hearing officer may, in appropriate cases, "satisfy the duty to develop the record by relying on the claimant's counsel to obtain additional medical documentation." *Wozniak v. Comm'r of Soc. Sec.*, No. 1:14–CV–00198–GWC, 2015 WL 4038568, at *9 (W.D.N.Y. June 30, 2015) (Crawford, J.); *Myers ex rel. C.N. v. Astrue*, 993 F.Supp.2d 156, 163 (N.D.N.Y. 2012) (Bianchini, M.J.).

■ Merritt contends that the hearing officer failed to develop the record properly. Merritt Mem. 11. On remand, the Appeals Council instructed the hearing officer to "[u]pdate the medical evidence concerning the claimant's physical and mental impairments," but left the decision whether to seek additional treating source opinions to the discretion of the hearing officer. Admin. R. at 364.

The Commissioner points to three steps by the hearing officer as satisfying his obligation to make reasonable efforts: (a) making attempts to obtain medical records, (2) "sending plaintiff to a consultative

examination," and (3) holding the record open for two weeks. SSA Mem. 10. These efforts, however, are somewhat less than they appear to be. The internal records show efforts to secure reports from providers only through August 27, 2008, not after remand. Admin. R. at 255. Similarly, the consultative examination the Commissioner cites occurred on May 17, 2007. *Id.* at 241–44. Thus, the only step taken by the hearing officer to expand the record on remand, at least as identified by the Commissioner and as appears from the record, was to keep the record open. *Id.* at 444.

At the December 14, 2010 hearing, the hearing officer asked Merritt's counsel about the status of medical records. *Id.* at 443–44. The hearing officer observed that no documentation more recent than 2008 has been submitted and that a request was outstanding. *Id.* He kept the record open until January 2, 2011. *Id.* at 444. The hearing officer subsequently issued his second decision on January 28, 2011. *Id.* at 26.

Additionally, Merritt had a further opportunity to submit evidence to the Appeals Council beginning August 31, 2011. *Id.* at 368. At that point, *id.* at 10, Merritt submitted a Polysonogram Report related to sleep apnea studies covering the period November 15, 2010 through June 7, 2011, *id.* at 370, 378, and blood sugar testing information from January through May 2011, *id.* at 388. These records, however, appear without any discussion by a medical source and their relationship to Merritt's claimed disability is unclear.

Thus, the Commissioner has little upon which to rely to demonstrate a reasonable effort to complete the record, especially with regard to the period following the Appeals Council's decision to remand. *Id.* at 361. Nonetheless, Merritt has the burden to show the severity of her impairments. And despite numerous opportunities to submit additional evidence from Doctors Kelly and Mahon, or from any other relevant sources, she has neither done so nor offered any explanation for her failure to have done so. Further, both Merritt and her attorney were aware that the hearing officer had not received additional medical records. *See id.* at 438, 443–44; *cf. Sanchez v. Barnhart,* 329 F.Supp.2d 445, 451 (S.D.N.Y.2004) (Marrero, J.) ("[T]he [hearing officer] was obligated, at a bare minimum, to inform [the claimant] of the [medical source's] failure to respond, and allow [the claimant] an opportunity to retrieve the necessary information.").

To the extent that the hearing officer was reasonably satisfied that the record offers a complete picture of Merritt's condition, and the hearing officer's belief is supported by substantial evidence, there is no cause to remand. The hearing officer need not canvas every medical provider while the claimant offers little or no guidance as to whether the medical records are relevant. Thus, this Court must consider whether further statements of either Dr. Kelly or Dr. Mahon are needed to make the record complete or whether the present record sufficiently supports the hearing officer's decision.

### 1. Records from Dr. Kelly

Dr. Kelly treated Merritt for her diabetes. *See, e.g.,* Admin. R. at 225. The hearing officer used Dr. Kelly's notes, among other sources, to support his finding "that there are no symptoms or problems connected to diabetes" that interfered with Merritt's ability to work. *Id.* at 20. Merritt argues that the omission of a medical source statement is significant, "as [the hearing officer] used the lack of opinion evidence regarding [Merritt's] diabetes to support a finding that the condition is non-severe." Merritt Mem. 14.

At least with respect to diabetes, there is no reason to suspect that the hearing

officer had an incomplete record. Merritt never stated during a hearing that her diabetes resulted in any disability. *Id.* at 401–59. Merritt's memorandum on appeal to the Appeals Council addressed diabetes only in conjunction with obesity and only with respect to whether obesity and diabetes, singly or in combination, worsened Merritt's degenerative joint disease. *Id.* at 350–51. As the hearing officer observes, opinions on Merritt's residual functioning presumptively include the effects of diabetes and obesity as those issues serve to reduce her residual functioning. *See id.* at 19. Thus, as to Dr. Kelly, the absence of further information does not render the record inadequate to determine disability.

### 2. Records from Dr. Mahon.

Dr. Mahon was one of Merritt's orthopedists. Admin. R. at 425. Merritt mentioned Dr. Mahon in the September 24, 2009 hearing as a specialist she saw for her knees and back. *Id.* Merritt's attorney listed records from Dr. Mahon as outstanding in a letter to the hearing officer dated September 24, 2009. *Id.* at 142. Thereafter, Merritt did not submit any materials from Dr. Mahon and did not ask the hearing officer for assistance in obtaining those materials. Moreover, Merritt did not mention Dr. Mahon in the December 14, 2010 hearing. *See id.* at 438 (discussing treatment since 2008 without mention of Dr. Mahon).[6]

With respect to Dr. Mahon, the absence of his opinion again leaves no uncertainty on the record: as the hearing officer noted, Dr. Ganesh found adequate back and shoulder motion. *Id.* at 20. Merritt identified Dr. Mahon as a treating source, but does not identify any gap in the record or

contested issue for which Dr. Mahon's opinion would be relevant. *See* Merritt Mem. 14. Moreover, if, as it appears, Merritt did not see Dr. Mahon at the time of the remand, *id.* at 438, his opinion would not be responsive to the state of Merritt's knees and back at that time. Thus, the failure to obtain evidence from Dr. Mahon does not constitute error.

### 3. Absence of an Updated Consultative Examination

A hearing officer's decision to order a consultative examination is discretionary. 20 C.F.R. § 404.1519a. The hearing officer need not order an examination unless one "is necessary for the [hearing officer] to make an informed decision." *Phelps v. Colvin*, 20 F.Supp.3d 392, 402 (W.D.N.Y.2014) (Wolford, J.).

The Appeals Council left to the hearing officer's discretion whether a consultative examination was necessary. *See id.* at 364–65 (providing that "the additional evidence may include any necessary consultative examination. . . ."). Merritt contends that a new consultative examination at the time of the remand was necessitated by Merritt's "worsening condition and based on the Appeals Council's order to update the medical evidence." Merritt Mem. 16. Merritt, however, fails to support her allegation of a "worsening condition."[7] Merritt has not demonstrated that the hearing officer committed error by not ordering a further consultative examination.

### B. Evidentiary Support for Residual Functional Capacity Finding

Merritt argues next that the hearing officer's finding that she retained some residual functioning capacity (enough to

---

**6.** Merritt did reference the lack of records from Dr. Mahon in her second appeal to the Council. Admin. R. at 391–92.

**7.** Merritt provides two citations, but neither actually supports her assertion. First, she

cites a set of records that *pre-dates* the examinations relied upon by the hearing officer, Admin. R. at 213–14, 266. Second, she points to records that relate only to diabetes and do not show any substantive change in Merritt's functioning, *id.* at 388.

"perform less than the full range of light work") was unsupported by substantial evidence. Merritt Mem. 17. This finding was critical because it drove the Hearing Officer's step-four findings that Merrit (1) could perform her past work as a circuit board assembler, Admin. R. at 25–26, and (2) was not disabled after February 14, 2005, id. at 26. Merritt makes two subsidiary arguments to support her contention.

### 1. Opinion of Dr. Cambareri

First, Merritt claims that the hearing officer's failure to give weight to the opinion of Dr. Cambareri—a treating source, Merritt asserts—was in error. Merritt Mem. 17. Specifically, she argues that Dr. Cambareri's November 30, 2009 opinion as to her residual functioning capacity was incorrectly dismissed by the hearing officer. See id. at 17–19.

Merritt is correct that hearing officers must be very explicit if they choose to reject a treating source's medical opinion.[8] A treating source, however, must have "an *ongoing* treatment relationship" with the claimant, meaning no long intervals without treatment unless such are "typical" for a claimant's condition. 20 C.F.R. § 404.1502 (emphasis supplied); see Petrie v. Astrue, 412 Fed.Appx. 401, 405 (2d Cir. 2011) (finding physician who signed four separate "treatment notes" was not a treating physician because of his "limited and remote contact" with claimant) (internal citation omitted). Here, Merritt argues that Dr. Cambareri satisfied this definition, but the Commissioner disagrees, see SSA Mem. 14–15.

The Commissioner has the better of this argument. Dr. Cambareri's statement of disability that is at issue is dated November 30, 2009: Dr. Cambareri last saw Merritt on November 9, 2006. Admin. R. at 312–13. As such, although his opinion as to Merritt's condition in 2006 should receive the treating-physician deference, his statement as to her condition in 2009 need not. Although some of the hearing officer's characterizations of statements bearing on Merritt's residual functioning capacity were inaccurate,[9] this Court cannot say

---

8. The treating source's opinion will be controlling if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2). If the opinion is not controlling, the hearing officer must consider various enumerated factors in deciding how much weight to accord it in comparison with the other proffered medical opinions. See id.; Barnett v. Apfel, 13 F.Supp.2d 312, 316 (N.D.N.Y.1998) (stating that "in determining what weight the [hearing officer] should accord to noncontrolling medical opinions, various factors need to be considered, including the existence of an examining relationship, the existence of a treatment relationship, supportability, consistency, specialization of the physician, and any other relevant factors.") (internal citation omitted).

9. The hearing officer discredited Dr. Cambareri's opinion because he claimed it was (1) internally inconsistent, (2) too early in time to be relevant, and (3) inconsistent with other medical opinion on the record, especially the

statements of Dr. Byrne and Dr. Ganesh. Admin. R. at 24–25. The Court agrees with the second of these bases, and holds that it is sufficient. It notes, however, that neither of the other two appear to be entirely correct. As to Merritt's condition in 2005 and 2006, Dr. Cambareri's were consistent, both internally and with the statements of Doctors Byrne and Ganesh.

As an example of the purported inconsistency, the hearing officer characterizes Dr. Byrne's opinion as "Dr. Byrne ... noted that the claimant's hands were 'doing well.'" Id. at 25. (Dr. Byrnes examined Merritt on November 27, 2006.) Id. at 213. This doing-well summary is inaccurate: overall, Dr. Byrne's examination notes indicate that Merritt was experiencing some disability with the use of her hands. Dr. Byrne observed "residual flexor tendinitis," "moderate bilateral carpal tunnel syndrome," a 10% schedule loss of use of both hands under the New York Worker's Compensation Board Medical Guidelines, and continued use of pain medication. Id. at 213–15. Neither Dr. Byrnes nor Dr. Ganesh

that his ultimate determination of residual functioning capacity lacked substantial evidence to support it.

### 2. Opinion of Dr. Ganesh

Merritt objects that Dr. Ganesh's opinion is vague and thus undeserving of the weight accorded it by the hearing officer. *See* Merritt Mem. 20–21. The hearing officer awarded Dr. Ganesh's opinion "great weight" because of "her programmatic expertise ... and physical examination." Admin. R. at 24. Doing so is certainly not legal error. *See* SSR 96–6P, 61 Fed.Reg. 34, 466 (July 2, 1996). Dr. Ganesh's opinion seems an appropriate indicator of Merritt's condition as of May 17, 2007. It is not contradicted by any substantial examination at that time or thereafter. Though Merritt's statements at the hearings contradict Dr. Ganesh, the hearing officer did not find her statements adequately supported by evidence, as discussed below. Thus, the hearing officer did not commit error in relying on Dr. Ganesh's opinion with respect to Merritt's condition as of May 17, 2007.

### C. Evidentiary Support for Credibility Finding

■ Merritt challenges the hearing officer's credibility determinations. These determinations, however, receive substantial deference. *See, e.g., Kessler v. Colvin,* 48 F.Supp.3d 578, 595 (S.D.N.Y.2014); *Lederman v. Astrue,* No. CV–07–3724 (BMC), 2008 WL 2620130, at *5 (E.D.N.Y. June 30, 2008) (Cogan, J.) (emphasizing that the hearing officer "has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment").

■ Here, the hearing officer found that Merritt's statements lacked credibility "as to the intensity, frequency, and limiting nature of her impairments" at least in part because "the claimant has failed to produce appropriate, probative evidence ... to substantiate her subjective allegations." Admin. R. at 24. At core, the hearing officer's concern was the inconsistency between Merritt's statements and her medical record. This inconsistency is a proper basis for a hearing officer's discounting of a claimant's testimony. *See, e.g., Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir.1984) (noting that courts must affirm hearing officers' discrediting of claimants' testimony when such is "supported by substantial evidence" including the reports of doctors) (internal citations omitted); *O'Brien v. Astrue,* No. 07–CV–1153 VEB, 2011 WL 1298755, at *6 (N.D.N.Y. Mar. 31, 2011) (Bianchini, M.J.) (noting that a hearing officer may properly "evaluate the credibility of [a claimant's] testimony, present[ ] a summary of his evaluation, and render[ ] an independent judgment regarding the extent of [claimant's] subjective complaints based on the objective medical and other evidence."). Thus, Merritt has not shown error in the hearing officer's credibility finding.[10]

### D. Evidentiary Support for Step Four Determination

■ Finally, Merritt challenges the evidentiary basis for the hearing officer's step four determination. Merrit Mem. 24–

characterized Merritt as "doing well"; Dr. Ganesh merely recorded that Merritt herself had "state[d that] her hands are doing fairly well," *id.* at 241.

**10.** Merritt also takes issue with various statements made by the hearing officer in his

discussion of her credibility, Merritt Mem. 21–24, but fails to dispute the noted absence of independent, objective evidence to support Merritt's statement or to provide medical context.

25. At the fourth step, the hearing officer must determine whether, "despite the claimant's severe impairment[,]" the claimant has sufficient residual capacity to perform prior work. *Cichocki,* 729 F.3d at 176 (internal citation omitted). The hearing officer's opinion on step four will stand when it provides "an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *Id.* at 177. Like with the first three steps of the disability insurance determination, at step four Merritt bore the burden of proof before the hearing officer. *See id.* at 176.

■ The hearing officer made specific findings as required for step four. Admin. R. at 25–26. The hearing officer relied on the expertise of the vocational expert and Merritt's statements of her work as performed. *Id.* Merritt's testimony at the hearing concerning her prior work gives no reason to doubt the conclusion of the vocational expert or the findings of the hearing officer. *See id.* at 450–54.

To the extent that Merritt's carpal tunnel interfered with her ability to do prior work, *id.* at 450, such limitation was properly excluded from the hearing officer's hypothetical, *id.* at 456–57, where the record does not show, for the reasons addressed above, that such limitation applied after May 2007, If, on remand, the hearing officer finds such disability for the period before May 2007, the opinion of the vocational expert concerning a hypothetical posed by Merritt's attorney is instructive. *Id.* at 458. To the extent that Merritt was, at that period, disabled in the manner described in the hypothetical, then Merritt would, presumably, be unable to perform her prior work.

## V. CONCLUSION

For the aforementioned reasons, this Court AFFIRMS the hearing officer's decision of January 28, 2011.

**SO ORDERED.**